United States District Court
Southern District of Texas
**ENTERED**
February 24, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JARROD NEAL FLAMING, | § | |
| TDCJ #1679601, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-2222 |
| | § | |
| UNIVERSITY OF TEXAS | § | |
| MEDICAL BRANCH, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

State inmate Jarrod Neal Flaming (TDCJ #1679601) has filed this civil action under 42 U.S.C. § 1983 and the Americans with Disabilities Act, alleging that he has been denied adequate medical care for chronic low back pain due to degenerative disc disease. Flaming has filed a motion for a preliminary injunction and temporary restraining order [Doc. # 1]. The Attorney General for the State of Texas has filed an *amicus curiae* response [Doc. # 18], to which Flaming has filed a reply [Doc. # 19]. At the Court's request, the Attorney General has also supplemented the record with a report pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1987) ("*Martinez* Report") [Doc. # 24]. Because the *Martinez* Report asserts affirmative defenses, the Court converted it to a motion for summary judgment on behalf of the defendants [Doc. # 29], who are deemed to have answered. Both Flaming and the defendants

through the Attorney General have had an opportunity to respond and supplement the record [Docs. # 30, # 31, # 34, # 37, # 42].  After considering all of the pleadings and the administrative records provided in the *Martinez* Report, this case will be dismissed for reasons set forth below.

## I.      BACKGROUND

Flaming is currently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ") at the Jester III Unit.[1]  Flaming sues the University of Texas Medical Branch ("UTMB"), TDCJ, and the following individuals in their individual and official capacities:  Executive Director of Clinical Services for UTMB Correctional Managed Health Care Dr. Owen Murray; Director of Health Services for TDCJ Dr. Lanette Linthicum; Dr. Robert Friedman; and TDCJ Executive Director Brad Livingston.[2]

In 2006, Flaming was diagnosed by a private physician with degenerative disc disease in his lower back.[3]  The diagnosis was noted upon his entry to TDCJ in 2010, and Flaming was prescribed 300 mg. of Gabapentin and 500 mg. of Hydrocodone

---

[1]      Complaint [Doc. # 13], at 2.

[2]      *Id.* at 2-4.

[3]      *Id.* at 6.

three times per day for pain control.[4]  Flaming contends that these prescriptions were eliminated at the Price Daniel Unit on April 18, 2011, "without medical reason."[5]  In November and December 2012, Flaming requested a walker to assist him with his balance, but his requests were denied.[6]

On October 1, 2013, an MRI done by the UTMB Radiology Department reportedly disclosed spondylosis (also known as osteoarthritis) and disc protrusions in Flaming's lower lumbar spine.[7]  At that time, Flaming claims that he was experiencing "severe shooting pains" in his back.[8]  At a follow-up appointment on October 22, a physician at the UTMB Orthopedic Clinic at John Sealy Hospital in Galveston recommended continuing physical therapy, 800 mg. of Ibuprofen three times per day and 750 mg. of Robaxtin twice per day.[9]  Due to continued pain, Flaming reportedly required mental health treatment for stress and anxiety and

---

[4]      *Id.* at 6-7.

[5]      *Id.* at 7.

[6]      *Id.*

[7]      *Id*. at 9.

[8]      *Id.* at 10.

[9]      *Id.*

developed "cardiac problems," including a "mild heart attack."[10]

On January 15, 2014, Flaming was seen by a physician (Dr. Smith) at the Jester III Unit for a back brace.[11]  Flaming claims that the physician reduced his prescription for pain medicine to 800 mg. of Ibuprofen once daily despite his abnormal MRI.[12]  The physician also denied Flaming's request for a walker.[13]

On February 18, 2014, a specialist (Dr. Rand) at the UTMB Orthopedic Clinic recommended 800 mg. of Ibuprofen three times per day for six weeks, then 800 mg. twice per day pending further evaluation.[14]  Dr. Rand also prescribed 300 mg. of Gabapentin three times per day, physical therapy with a TENS unit, a medical mattress, limitations on strenuous activities or prolonged standing, medical boots with insoles and a return visit to the Orthopedic Clinic in six months.[15]  According to Flaming, none of these recommendations were implemented.[16]

On April 18, 2014, Flaming was seen again by Dr. Smith at the Jester III Unit,

---

[10]     *Id.*

[11]     *Id.*

[12]     *Id.*

[13]     *Id.*

[14]     *Id.*;  UTMB Ortho Clinic Note [Doc. # 19-1], at 2.

[15]     UTMB Ortho Clinic Note [Doc. # 19-1], at 2.

[16]     Complaint [Doc. # 13], at 11.

where he reported that he was in severe pain that was "getting worse."[17]  Dr. Smith noted the recommendations made by the Orthopedic Clinic in February but failed to implement any of them.[18]

By November 24, 2014, Flaming's pain medication was limited to one tablet of Ibuprofen once per day for twenty days.[19]  On January 15, 2015, Flaming again complained of radiating pain or radiculopathy his lower back.[20]  Dr. Smith prescribed 800 mg. of Ibuprofen three times per day for ninety days.[21]

From February 2015 through July 2015, Flaming was treated by Defendant Dr. Friedman, who is described as a general practitioner.[22]  Dr. Friedman prescribed Effexor, which is used to treat anxiety disorders, for pain control.[23]  Noting that he had a prior heart attack, Flaming advised Dr. Friedman that Effexor has been the subject of litigation for causing "cardiac deaths," but Friedman reportedly "did not care, and

---

[17]     *Id*. at 12.

[18]     *Id.*

[19]     *Id.*

[20]     *Id.* at 15.

[21]     *Id.*

[22]     *Id.* at 16.

[23]     *Id.*

did not prescribe any pain medication."[24]

In his pending complaint, which is dated August 18, 2015, Flaming contends that he has been denied adequate pain medication under a discriminatory policy, adopted by Defendants Dr. Murray and Dr. Linthicum, which denies "pain management" to anyone who is not a cancer patient.[25]  By denying him effective medication for pain, Flaming contends that defendants have violated his constitutional right to adequate medical care under the Eighth Amendment.[26]  Alleging further that the policy discriminates against prisoners who are not cancer patients, Flaming also contends that defendants have denied him equal protection in violation of the Fourteenth Amendment.[27]  In addition, Flaming contends that he has been "excluded from" pain management and denied a "stand-up locker," a medical mattress, and medical boots in violation of the Title II of the Americans with Disabilities Act.[28] Flaming further accuses Murray, Linthicum, and Livingston of gross negligence in violation of Texas law for failing to ensure that he receives reasonably adequate

---

[24]     *Id.* at 17.

[25]     *Id.* at 19.

[26]     *Id.* at 18-22.

[27]     *Id.* at 22-23.

[28]     *Id*. at 24-27.

medical services.[29]

Flaming seeks declaratory and injunctive relief.[30]  He also seeks compensatory and punitive damages.[31]  Arguing that he has been denied care for a serious medical need in violation of the Eighth Amendment, he seeks a preliminary injunction requiring UTMB to provide him with a "plan of treatment by a qualified specialist, to include pain control for moderate to severe pain," and an order directing TDCJ to carry out that plan.[32]

The defendants maintain that Flaming has not met the criteria for a temporary restraining order or preliminary injunction.[33]  The defendants assert further in their *Martinez* Report that Flaming's claims fail as a matter of law.[34]  The parties contentions are addressed below under the summary judgment standard of review.

## II.   <u>STANDARD OF REVIEW</u>

As noted above, the Court converted the *Martinez* Report to a motion for

---

[29]      *Id.* at 30-31.

[30]      *Id.* at 31.

[31]      *Id.* at 32.

[32]      Declaration in Support [Doc. # 2], at 10, ¶ 78.

[33]      Attorney General's *Amicus Curiae* Response to Plaintiff's motion for Preliminary Injunction and Temporary Restraining Order [Doc. # 18], at 2-3.

[34]      *Martinez* Report [Doc. # 24].

summary judgment on behalf of the defendants and gave both plaintiff and defendants an opportunity to present additional briefing.[35]  Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under this rule, a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc*., 477 U .S. 242, 248 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id*.

If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to provide "specific facts showing the existence of a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted).  However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences,

---

[35]     Order [Doc. # 29], at 2.

8

unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes County*,

678 F.3d 344, 348 (5th Cir. 2012) (quoting *TIG Ins. Co. v. Sedgwick James of Wash.*,

276 F.3d 754, 759 (5th Cir. 2002)); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of

material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla

of evidence).

## III.   DISCUSSION

### A.   Exhaustion of Administrative Remedies

The defendants contend that this action must be dismissed because Flaming did

not properly exhaust administrative remedies with respect to any of his claims before

filing suit in this case.[36]   The Prison Litigation Reform Act ("PLRA")  prohibits any

action by a prisoner in federal court under 42 U.S.C. § 1983 concerning "prison

conditions" until "such administrative remedies as are available are exhausted."  42

U.S.C. § 1997e(a).   The exhaustion requirement found in § 1997e(a) applies to all

inmate suits about prison life, "whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong."

*Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Supreme Court has repeatedly

emphasized that § 1997e(a) mandates exhaustion of *all* administrative procedures

---

[36]     *Martinez* Report [Doc. # 24], at 6-8.

before an inmate can file any suit challenging prison conditions. *See Booth v. Churner*, 532 U.S. 731, 739 (2001); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *see also Jones v. Bock*, 549 U.S. 199, 212 (2007) (confirming that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

It is well established that TDCJ has a formal two-step administrative grievance process. *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004); *see also Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step 1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable); *see also Almond v. Tarver*, 468 F. Supp. 2d 886, 896 (E.D. Tex. 2006) (citing 37 TEX. ADMIN. CODE ANN. § 283.3 (West 2006)).   A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. *See Johnson*, 385 F.3d at 515.   Once an inmate receives a response to his Step 1 grievance, he then has up to ten days to file a Step 2 grievance to appeal an unfavorable result at the state level. *See id*.   Substantial compliance with this process is not enough to exhaust remedies under the PLRA. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy

exhaustion.").  A Texas prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement.  *See Johnson*, 385 F.3d at 515 (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

The record reflects that Flaming filed numerous grievances regarding his medical care.[37]  Of these, there are only three grievances for which Flaming completed both Steps 1 and 2 with respect to the claims in this case.  Flaming filed two Step 1 grievances on July 13, 2015 (Grievance #2015177744 and #2015181814), complaining about Dr. Friedman's decision to prescribe Effexor and the failure to implement adequate pain management.[38]  Administrative review of Flaming's Step 2 grievances was not complete until September 22 and September 30, 2015, respectively.[39]  Likewise, on August 1, 2015, Flaming filed a Step 1 grievance (Grievance #2015188678) regarding his request for a stand-up floor locker.[40]  Administrative review of his Step 2 grievance appeal was not complete until October

---

[37]    *Martinez* Report [Doc. # 24], Exhibits A and B;  Plaintiff's Response to Attorney General's *Martinez* Report [Doc. # 30], Exhibit A.

[38]    Attorney General's Reply to Plaintiff's Response to Attorney General's *Martinez* Report [Doc. # 37-1], Exhibit A, at 7-14.

[39]    *Id.*

[40]    Plaintiff's Response to Attorney General's *Martinez* Report [Doc. # 30-1], Exhibit A, at 3-4.

11

21, 2015.[41]

As the defendants correctly note, Flaming did not complete the administrative remedy process before he filed his pending federal complaint on August 18, 2015, with respect to any of his grievances.  By submitting his complaint in federal court without first completing administrative review, Flaming failed to comply with the PLRA, which mandates exhaustion *before* filing suit.  In that respect, the Fifth Circuit has emphasized that "pre-filing exhaustion of prior grievance process is mandatory" and that district courts lack discretion to excuse a prisoner's failure to exhaust his administrative remedies.  *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012);  *see also Jones v. Lamb*, No. 14-41014, slip op. at 2 (5th Cir. Feb. 11, 2016) ("Failure to completely exhaust prior to filing an action cannot be excused.").  Because it is apparent that Flaming failed to exhaust available administrative remedies before filing suit in federal court, his complaint is subject to dismissal for failure to comply with the PLRA.  *See Gonzalez*, 702 F.3d at 788 (holding that dismissal is required even where a prisoner has exhausted remedies after his suit was underway).

The Court, nevertheless, does not dismiss Flaming's complaint for lack of exhaustion here.  In the interest of judicial economy and cognizant of Flaming's complaints of long- standing, severe pain, but without excusing Flaming's failure to

---

[41]       *Id*. at 5-6.

exhaust, the Court concludes that Flaming is not entitled to relief for alternative reasons discussed more fully below.

### B.    Statute of Limitations

The defendants contend that some of Flaming's allegations are barred by the governing statute of limitations.[42]  Civil rights claims brought under 42 U.S.C. § 1983 and the ADA are governed by the two-year statute of limitations provided by Texas law.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a);  *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (§ 1983);  *Frame v. City of Arlington*, 616 F.3d 476, 488-89 (5th Cir. 2011) (ADA).  This means that the plaintiff had two years from the time that his claims accrued to file a civil rights complaint concerning these allegations.  *See Gonzalez v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998) (noting that a cause of action accrues, so that the two-year statute of limitations begins to run, when the plaintiff knows or has reason to know of the injury which is the basis of the action).

The complaint appears to contain allegations that Flaming was denied adequate medical care and accommodations for a disability in 2011 and 2012.[43]  The complaint in this case is dated August 18, 2015, meaning that these claims are outside the two-

---

[42]      *Martinez* Report [Doc. # 24], at 3-4.

[43]      Complaint [Doc. # 13], at 7.

year limitations period.[44]  Claims that are plainly barred by the applicable statute of limitations are subject to dismissal as frivolous under 28 U.S.C. § 1915(e)(2)(B)(I). *See Gartell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993).  Accordingly, Flaming's allegations that he was denied adequate medical care and accommodations for a disability prior to August 18, 2013 are dismissed as frivolous.  *See id.*

### C.    Eleventh Amendment Immunity

The defendants contend that they are entitled to immunity under the Eleventh Amendment from Flaming's § 1983 claims against them.[45]  The Eleventh Amendment bars suit against state entities such as TDCJ and UTMB regardless of whether money damages or injunctive relief is sought under § 1983.[46]  *See Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998); *Clay v. Texas Women's University*, 728 F.2d 714, 715-16 (5th Cir. 1984). Thus, the § 1983 claims against TDCJ and UTMB must be dismissed.

It is also settled that the Eleventh Amendment bars a recovery of money damages under § 1983 from state employees in their official capacity.  *See Will v.*

---

[44]    Complaint [Doc. # 13], at 32.

[45]    *Martinez* Report [Doc. # 24], at 8-9.

[46]    The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend XI.

*Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001). To the extent that Flaming seeks monetary damages in this case, the Eleventh Amendment bars his claims against the individual defendants (Dr. Murray, Dr. Linthicum, Dr. Friedman, and Director Livingston) in their official capacity as state employees. Accordingly, all § 1983 claims for monetary damages against the individual defendants in their official capacities must be dismissed as barred by the Eleventh Amendment.[47]

### D.   Qualified Immunity

The individual defendants contend that they are entitled to qualified immunity from Flaming's claims against them in their individual or personal capacity because none of his claims have merit.[48] The doctrine of qualified immunity shields officials from civil liability for damages alleged to result from the performance of discretionary functions, so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "When a defendant invokes qualified

---

[47]   A narrow exception to Eleventh Amendment immunity exists for suits brought against individuals in their official capacity, as agents of the state or a state entity, where the relief sought is injunctive in nature and prospective in effect. *See Aguilar*, 160 F.3d at 1054 (citing *Ex parte Young*, 209 U.S. 123 (1980)). Although Flaming seeks an injunction in this lawsuit, that request fails for reasons discussed in more detail below because Flaming does not demonstrate a violation of the Constitution or the ADA in this case.

[48]   *Martinez* Report [Doc. # 24], at 9-26.

immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).

To determine whether a defendant is entitled to qualified immunity, a court inquires (1) whether the plaintiff has alleged a violation of a constitutional or statutory right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred. *See Hampton v. Oktibbeha Cty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007) (citing *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006)); *see also Wilkerson v. Goodwin*, 774 F.3d 845, 851 (5th Cir. 2014). A defendant official is entitled to qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted). This is an "exacting standard" that protects "all but the plainly incompetent or those who knowingly violate the law." *City and County of San Francisco v. Sheehan*, — U.S. —, 135 S. Ct. 1765, 1774 (2015) (citation omitted).

### 1.    Eighth Amendment Claims Against Dr. Friedman

Flaming contends that Dr. Friedman has violated the Eighth Amendment by refusing to provide him with effective medication for chronic low back pain or to

implement treatment recommended by the specialist at UTMB (Dr. Rand).[49]  "Prison officials violate the Eighth Amendment when they demonstrate deliberate indifference to a prisoner's serious medical needs constituting an unnecessary and wanton infliction of pain."  *Brewster v. Dretke*, 587 F.3d 764, 769-70 (5th Cir. 2009) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  The deliberate indifference standard is an "extremely high" one to meet.  *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  To establish deliberate indifference in violation of the Eighth Amendment, a prisoner must show that (1) the defendants were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks omitted).

---

[49]      Complaint [Doc. # 13], at 7-17.  Flaming contends that all of the defendants violated his rights under the Eighth Amendment by failing to provide him with effective pain medication.  *See id.*  Because Dr. Murray, Dr. Linthicum, and Director Livingston are supervisory officials who had no personal involvement in Flaming's medical care, the Court considers Flaming's Eighth Amendment claims against them separately below.

The defendants have provided Flaming's relevant medical records and an affidavit from Dr. Steven Bowers, who has summarized the care provided.[50]  The record shows that Flaming was seen for low back pain at the UTMB Orthopedic Spine Clinic on February 18, 2014.[51]  During that examination Dr. Rand observed that Flaming was a 45-year old male with "chronic, mild degenerative lumbar spondylosis without radiculopathy."[52]  As a "plan of care" Dr. Rand recommended 800 mg. of Ibuprofen three times daily for six weeks, then 800 mg. twice daily subject to further evaluation.[53] Dr. Rand also recommended:  800 mg. of Gabapentin three times daily; continued physical therapy; continued therapy with a TENS unit;  a medical mattress at the discretion of the unit provider;  restrictions or limitations on strenuous activities or prolonged standing greater than one hour;  medical boots or insoles;  and to return to the clinic in six months.[54]

The TDCJ medical records establish that, consistent with Dr. Rand's recommendation, a physician at the Jester III Unit prescribed Ibuprofen during a visit

---

[50]     *Martinez* Report [Doc. # 24], Exhibit A, Affidavit of Steven Bowers, M.D. ("Bowers Affidavit"), at 2-8.

[51]     *Martinez* Report [Doc. # 24], Exhibit G, at 2.

[52]     *Id.* at 3.

[53]     *Id.*

[54]     *Id.*

to the clinic on February 21, 2014, although the prescription was for a dosage of only 600 mg. twice daily.[55]   On February 27, 2014, Flaming was given a referral for physical therapy, including use of a TENS unit.[56]  Flaming was also provided with restrictions that dictated limited sitting and standing.[57]  These limitations were added to other restrictions already in place which dictated a low bunk assignment, a ground-floor cell assignment, sedentary work only limited to no more than four hours, along with restrictions on walking, lifting, and bending.[58]

Flaming did not receive a medical mattress in accordance with Dr. Rand's recommendation because he did not meet the criteria found in the UTMB Correctional Managed Care Provider Manual, which states that special medical mattresses "should only be used in an infirmary and only in rare situations."[59]  Flaming also did not receive medical boots as recommended by Dr. Rand, because policy states that such boots are not appropriate "unless the patient has a significantly deformed foot, limb

---

[55]      *Id*, Exhibit D, at 119.

[56]      *Id.*, Exhibit F, at 2.

[57]      *Id.*, Exhibit D,  at 116.

[58]      *Id.* at 86.

[59]      *Id.* at 21; Exhibit E, at 31; Exhibit I, at 2.

length discrepancy (> ½ inch), or a poorly healing foot ulcer."[60]  Flaming was provided with a "Bio-Skin Back Support" by the Rehabilitation Department.[61]  The Rehabilitation Department also issued him a cane pass to help Flaming ambulate with greater stability.[62]

Flaming was not prescribed Gabapentin as recommended by Dr. Rand, but was instead offered a low dose prescription for Pamelor (Nortriptyline) for pain management.[63]  Dr. Bowers explains that both Pamelor and Gabapentin work to inhibit the pain receptors caused by nerve pain.[64]  Within TDCJ, Pamelor is customarily prescribed in place of Gabapentin, which is a non-formulary medication.[65]  Initially, Flaming elected not to take the Pamelor, stating that he stopped taking the low dose prescription previously because it did not help.[66]  Flaming eventually started taking Pamelor on April 8, 2014, and his dosage was increased on July 1, 2014.[67]  Flaming's

---

[60]     *Id.*, Exhibit I, at 2.

[61]     *Id.*, Exhibit D, at 30, 56, 113.

[62]     *Id.* at 20, 82, 122.

[63]     *Id.* at 119.

[64]     *Id.*, Exhibit A (Bowers Affidavit), at 8.

[65]     *Id.* at 4, 8.

[66]     *Id.*, Exhibit D, at 119.

[67]     *Id.* at 89, 105-07.

compliance with Pamelor was "poor" and he discontinued taking it on August 25, 2014, because he did not like standing in line at the pill window.[68]   Flaming's prescription for Pamelor was reinstated at his request at a later pill window time on November 24, 2014.[69]

Dr. Friedman renewed Flaming's prescriptions for Ibuprofen and Pamelor on February 25, 2015, and again on April 14, 2015.[70]  On July 3, 2015, Dr. Friedman also prescribed Effexor (Venlafaxine) on a trial basis to see if it would reduce Flaming's back pain.[71]  On August 2, 2015, Flaming requested that his prescription for Effexor be discontinued because he felt it could be affecting his heart.[72]

The medical records reflect that, contrary to Flaming's contentions, many of the recommendations made by Dr. Rand were implemented.  To the extent that medical providers at the Jester Unit declined to implement all of the treatment recommended by Dr. Rand, their failure to do so does not demonstrate deliberate indifference.  *See Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999);  *see also Simon v LeBlanc*, 623 F. App'x 276, 277 (5th Cir. 2015) (per curiam) ("The refusal to provide medicine that

---

[68]     *Id.* at 74.

[69]     *Id.* at 58-59.

[70]     *Id.* at 24, 39.

[71]     *Id.*, Exhibit E, at 30-33.

[72]     *Id.* at 16.

was prescribed at another facility or by a different doctor does not rise to the level of deliberate indifference."). To the extent that Flaming argues that he was entitled to narcotics or any particular type of medication, the question whether a particular form of treatment is indicated "is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Thus, Flaming's disagreement with the level of medical treatment that he received does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citations omitted).

Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. *See Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). It is well established that allegations of unsuccessful medical treatment, acts of negligence, or medical malpractice "do not constitute deliberate indifference[.]" *Gobert*, 463 F.3d at 347 (citations omitted). Thus, allegations of negligence and medical malpractice will not suffice to demonstrate an Eighth Amendment claim. *See Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001); *see also Stewart*, 174 F.3d at 534 ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not.").

Viewing all of the evidence in the light most favorable to the plaintiff, as non-movant, Flaming does not show that Dr. Friedman or any other treatment provider at the Jester Unit denied him care or intentionally treated him incorrectly with wanton disregard for a serious medical condition. *See Domino,* 239 F.3d at 756. This is true for the period from August 2013, through the filing of the complaint in this Court, the time within the limitations period, as well as earlier. Flaming's allegations concerning the level of care that he received are not sufficient to raise a genuine issue of material fact on whether he was treated with deliberate indifference and he does not articulate a violation of the Eighth Amendment. Because Flaming fails to establish a constitutional violation in connection with his medical care, Dr. Friedman is entitled to qualified immunity on the claims against him under the Eighth Amendment.

### 2.    Eighth Amendment Claims Against Supervisory Officials

Flaming also asserts Eighth Amendment claims against Dr. Murray, Dr. Linthicum, and Director Livingston in their capacity as supervisory officials employed by UTMB and TDCJ, respectively.[73]   In particular, Flaming claims that these defendants have adopted an unconstitutional policy of allowing unit medical providers to override, refuse, or change treatment recommended by specialists, which violates

---

[73]    Complaint [Doc. # 13], at 18-19.

the Eighth Amendment.[74]   Flaming claims further that Murray, Linthicum, and Livingston have implemented an unconstitutional policy that denies pain management to anyone who is not a cancer patient in violation of the Eighth Amendment.[75]

In this circuit, supervisory officials can be held liable only if the plaintiff demonstrates either one of the following: (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation.  *See Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987).  Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Id.* (quotations omitted); *see also Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) ("A supervisory official may be held liable [under § 1983] . . . if . . . he implements unconstitutional policies that causally result in the constitutional injury").

Flaming does not allege that Murray, Linthicum, or Livingston had any personal involvement in the treatment he received or the decisions made about his medical care.  Likewise, for reasons set forth above, Flaming has not shown that he

---

[74]     *Id.*

[75]     *Id.* at 19.

was denied adequate medical care in violation of the Eighth Amendment or that any policy has resulted in a constitutional violation.   Thus, Murray, Linthicum, and Livingston are entitled to qualified immunity from Flaming's Eighth Amendment claims against them under 42 U.S.C. § 1983.

### 3.      Fourteenth Amendment Claims

Flaming claims further that all of the defendants violated his right to equal protection under the Fourteenth Amendment by failing to provide him with the same level of pain management that is given to inmates who are cancer patients.[76]  This allegation is not a valid basis for an equal protection claim.  In that respect, the Equal Protection Clause found in the Fourteenth Amendment requires that similarly situated persons be treated alike.  *See Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  "[I]t does not require classes of people different in fact or opinion to be treated in law as though they were the same."  *Cunningham v. Beavers*, 858 F.2d 269, 272 (5th Cir. 1988) (citations omitted).

A diagnosis of degenerative disc disease with chronic low back pain is different in fact from a diagnosis of cancer, which is a terminal disease.  Flaming does not otherwise show that he has been treated differently from other similarly situated inmates who suffer from chronic low back pain due to degenerative disc disease.

---

[76]      Complaint [Doc. # 13], at 22-23.

Because Flaming has not demonstrated the requisite disparate treatment for similarly situated individuals. Therefore, he fails to establish a violation of the Equal Protection Clause and the defendants are entitled to qualified immunity from Flaming's Fourteenth Amendment claim.

### E.   ADA Claims

Flaming claims that he has been excluded from adequate pain management as a medical service in violation of the ADA.[77]  Flaming claims further that he has been denied a medical mattress, medical boots, and a stand-up locker to accommodate his disability.[78]  The defendants maintain that these claims are without merit.[79]

As an initial matter, Flaming may not sue Murray, Linthicum, Livingston, or Friedman in their individual capacities under the ADA.  *See Nottingham v. Richardson*, 499 F. App'x 368, 376 n.6 (5th Cir. 2012) (citing *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999)).  Flaming likewise fails to state a claim against TDCJ, UTMB, or the individual defendants in their official capacities for reasons explained below.

Title II of ADA prohibits "disability discrimination in the provision of public services."  *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011).

---

[77]    Complaint [Doc. # 13], at 24-27.

[78]    *Id.* at 25-27.

[79]    *Martinez* Report [Doc. # 24], at 25-26.

26

Specifically, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.  Title II of the ADA "unmistakably includes State prisons and prisoners within its coverage." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998).

To establish a violation of Title II, a plaintiff must show that (1) he is a qualified individual with a disability;  (2) he is being excluded from participation in, or denied the benefits of some public entity's services or programs, or is otherwise being discriminated against by the defendants;  and (3) such exclusion, denial of benefits, or discrimination is "by reason of" his disability.  *Lightbourn v. County of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997).  To the extent that Flaming complains that he has been denied a medical mattress, medical boots, and a stand-up locker, the record reflects without contradiction that none of the defendants were personally involved in the complained of adverse decisions.[80]

To the extent that Flaming contends that he has been denied adequate pain

---

[80]     *See* Complaint [Doc. # 13], Exhibit B & C (Inmate Requests to Dr. Niak for a stand-up locker); *Martinez* Report [Doc. # 24], Exhibit D, at 21-22 (denial of medical mattress by Dr. Williams); Exhibit E, at 31 (denial of medical mattress by Dr. Niak); Exhibit D, at 102 (denial of medical boots by Dr. Smith);  Plaintiff's Response to Attorney General's *Martinez* Report [Doc. # 30-1], Exhibit A, at 3-6 (grievance regarding denial of stand-up locker by Dr. Niak).

management, this claim fails.  Allegations of insufficient medical care, negligent medical care, or an insufficient medical program are not cognizable claims under the ADA.  *See Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'") (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)); *see also Burger v. Bloomberg*, 418 F.3d 882, 882 (8th Cir. 2005) (medical treatment decisions are not a basis for Rehabilitation Act or ADA claims).

Flaming does not otherwise allege facts showing that he was discriminated against or adversely treated by reason of a disability.  *See Davidson v. Texas Dep't of Criminal Justice*, 91 F. App'x 963, 965-66, 2004 WL 542206, *2 (5th Cir. 2004) (affirming dismissal of a prisoner's ADA claim because he failed to allege or show that he was adversely treated solely by reason of a disability); *Hay v. Thaler*, 470 F. App'x 411, 418, 2012 WL 2086453, *4 (5th Cir. 2012) (same).  Accordingly, Flaming's claims under the ADA must be dismissed.

## F.   State Law Claims

By failing to ensure that he receives adequate medical care, Flaming accuses Murray, Linthicum, and Livingston of gross negligence in violation of state law.[81]

---

[81]   Complaint [Doc. # 13], at 30-31.

Where a court dismisses a party's federal claims, the "general rule" is to dismiss any pendent state law claims without prejudice so that the plaintiff may re-file his claims in the appropriate state court. *See Wong v. Stripling*, 881 F.2d 200, 203-04 (5th Cir. 1989); *see also Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir. 1994) (upholding the dismissal of an inmate's state law claims following the dismissal of his federal claims). The decision to entertain or dismiss the pendent state claims is within the district court's discretion. *See Wong*, 881 F.2d at 204. Because the complaint has failed to state a federal claim, this Court elects to follow the general rule and to dismiss the pendent state law claims without prejudice.

## IV.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.   The defendants' motion for summary judgment [Doc. # 24] is **GRANTED**, **in part**. The claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act are **DISMISSED with prejudice**. The state law claims for negligence are **DISMISSED without prejudice**.

2.   The plaintiff's motion for preliminary injunction and temporary restraining order [Doc. # 1] is **DENIED as moot**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas on <u>February 24</u>, 2016.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE